May it please the court. Jennifer Bennett on behalf of Sgt. Davidson. Congress passed the Military Lending Act because lenders were targeting service members with predatory loans, including, in the words of the Defense Department at the time, unscrupulous automobile financing. Congress and the Defense Department's concern was not just high interest loans, but again, in the words of the Defense Department at the time, loans that were packed with excessive fees and ancillary products. And especially concerning was that lenders were taking service members' cars as collateral for these loans, putting what is often service members' only real asset and only mode of transportation at risk. United Auto's loan here is precisely the kind of loan Congress sought to regulate by passing the Military Lending Act. It's packed with charges, including an unexplained fee, undisclosed interest, and GAAP, or Guaranteed Asset Protection Coverage, which is a financial product, not a car product. It's usually available for less when you buy it separately from a car loan. And it only kicks in in the rare circumstance in which your asset is totaled and you owe more on a loan than you have left on insurance, or rather than left than insurance coverage pays out. There's no dispute that all of this financing would What United Auto says is, well, hey, is GAAP coverage inherently predatory? What's wrong with GAAP coverage? Your Honor, it's not necessarily inherently predatory. We do think it has limited value in certain circumstances, which is when you have a loan that is going to far exceed the value. So why shouldn't someone be entitled to purchase GAAP coverage when they're purchasing a vehicle? Those two go together, don't they? Your Honor, we are not arguing that the Military Lending Act or anything else prevents someone from purchasing GAAP coverage when they're purchasing a vehicle. The only question is, is if they take out a loan to purchase that GAAP coverage, that loan would ordinarily, there's no dispute either that that loan would be subject to the Military Lending Act. Isn't it also fair that the military sort of a little bit unique that the military is an employer that requires its employees to pay their debts? And so if you're unlike, you know, maybe in some circumstances where the debt might not be ultimately collectible in some non-governmental settings, the military is like, you know, quite good about ensuring that its soldiers pay their debts. And so it strikes me that GAAP coverage to the extent it's useful anywhere seems most useful in this time. Your Honor, I'm not sure whether that's correct. And there's some actually some facets of the particularly that service members sometimes take their cars overseas and GAAP coverage is typically voided in that circumstances. But whether GAAP coverage is beneficial or not is irrelevant to this question, which is simply- What's the point of the Military Lending Act? Isn't it to, I thought it's to prevent predatory lending or to, yeah, to prevent predatory lending. That's correct. And so the question is just if you take out a loan for GAAP coverage, the question here is there's no dispute that- Where's the predatory, where's the predatory lending in this situation? So in this situation, it's by combining the coverage with the purchase of a loan. And so- So it's the GAAP coverage combination that makes it predatory, right? Is what you're saying that makes it fall within the Military Lending Act, correct? Your Honor, the Military Lending Act, in fact, tells us what falls within the statute. And what it says is, is that the only things that are exempt, lenders can never take service members' cars as security for a loan. And these sorts of ancillary products, excessive fees, undisclosed, there's undisclosed interest in this loan, any sort of thing that you can package in with a loan. But the Military Lending Act has very specific regulations about how you can do it. Do you mind turning just for a minute? You started off, so we responded to you. You started off talking about broad purpose and what was intended to be done here. And we typically start instead with the text for good reasons, I think, because we can have realistic disagreements about what purpose might've been here. Can you help me understand the phrase, the express purpose? It strikes me that there are two plausible interpretations of that, or at least possible. You don't have to concede they're plausible, but they're two possible. One sort of specific and identified, and the other is sole and only, right? And those are two possibilities. And you and your colleague disagree over which one applies here. And I guess what I want to ask you is to comment on this idea that the difference of those depends upon the nature of the statement in which the express purpose is included. And so, where the express purpose is included in a directive, right? A loan must be used for the express purpose of purchasing a car. That means only, right? Because it's a directive, but it's instead where it's a condition, right? Like, is the loan offered for the express purpose of buying a car? Then it need not be only. And I'm going to give you a hypothetical, and I know this is a long-winded answer, and maybe Judge Grayson lets you run over a little bit because I'm long-winded. But if I give my law clerk over here $20 for the express purpose of buying a sandwich, he then goes and buys a sandwich and a book, then he's violated the express purpose because that's a directive. The express purpose is the directive. But if instead, I give him $20 and tell him, go buy a book and a sandwich, and when he gets back, his co-clerk asks the conditional question, did the judge give you $20 for the express purpose of buying the book? The answer there seems yes, not no. And you want to say the answer's no, because there can only be one, and I gave him two purposes. Does my hypothetical make sense? Yes, Your Honor. I think so. And I think what you're pointing at is there are two, I agree, there are two possible meanings of the word express. And I also agree that the way you figure out which one the statute uses is by looking to the text of the statute, its structure, and its purpose. Now, I think if I understand your question correctly, I think what you're saying is in all purposes, if the statute is a directive, that means exclusive. And if the statute is something to do with the purpose of the loan or the transaction, that should mean exclusive. It's a condition, right? The difference between a directive and a condition. Correct. I think that's, you know, I think there are statutes, for example, we cite the Sugar Act of 1937 on page 26 of our brief, where I think it would meet what you're saying is the description part, you know, prong, which says, you know, if you, it's excluding, just like the Military Lending Act is an exemption from the statute, and the statute was about quotas for sugar importation, and it's excluding from that quota importation that's for the express purpose. Let me make sure that I understand your argument on this express purpose of financing. Let's say that the lender says that this is for the express purpose of buying a car, and puts, stamps that on the loan itself. This is for the express purpose of purchasing a car. And then included within the law are charges for car washes and gap coverage and other things that may have some related, but it's a bundle situation where you, I guess it's all or nothing that the loan, you don't have, the borrower doesn't have the right to sort of separate saying I want this, but not that. Is that correct? I'm not sure I completely understand your question. So if I'm not answering it, please let me know. Well, I guess what I'm saying is that I don't think that the label that the lender puts on the loan is dispositive. Yes, Your Honor. I think that's exactly right, but that is the result that would happen if what we said is expressed in this context just means explicit, because then all a loan would have to say is that it's a car loan, and this would be a problem. Right, and you could smugly on all kinds of things. That's exactly right. But the thing for the express purpose, it says they're looking at the text here of financing the purchase of a car, and I'm not sure that the purchase of insurance is for the purpose of, as for financing the purchase of the car. The insurance doesn't even come into play unless the car is totaled, and that event is well after the purchase. I know when I go to an automobile dealer, I don't want gap coverage because it's more expensive often when it's combined. I want to buy the insurance through my insurance, and one of the big differences is when you buy these things through an automobile dealer and take that loan, you have to put up the car as collateral, and when I'm purchasing gap coverage, I don't have to put up my car as collateral. All I have to do is pay the premium, and so there are ways, I think, to take advantage of servicemen by having gap coverage actually more expensive than it would be to buy insurance on the open market, and I think that's the answer I might give to Judge Stacker's excellent question, that there are ways to smuggle these add-ons in and stamp the label, well, this is for the purchase of a car, when it's not. They can still offer gap coverage. They're just subject to the add-ons can be predatory, but maybe Judge Stacker, Judge Richardson has further questions of you. If you don't mind, Judge, can you go back to the distinction that I was trying to get at, because I don't think your sugar example works, because there it's the express purpose of the equivalent amount, and so I don't think there the express purpose, it actually doesn't suggest that it has to be the same, because equivalent amount means that you could use different sugar. So, if you bring in with hand A and export with hand B, but instead of spending our time fighting that example, do you have any other example where it's express purpose means sole when it's used as a condition instead of a directive, right? Because when I see, I mean, I could give you a number of examples where a condition, conditional use of express purpose means specified or identified, but I haven't been able to find one where it is a means sole or only. Like the sugar example, that seems to come from equivalent and actually it means that seems to undermine your use of express purpose there. So, in the sugar example, the question is, is it, could you have it for the express purpose? Could you label what you're doing with the sugar? I'm exporting an equivalent part, but instead you aren't, you're keeping the sugar or you are exporting part of the sugar. But there are a number of statutes cited on pages 26 and 27. I'm actually not aware of any statute and United Auto doesn't cite one where for the express purpose of would allow you to use the loan or the financing for any other purpose. And I'll note that- Right, but most of these, so the ones that you cite when we go and we start talking about the secretary of interior, they're directives, right? And so this is what I'm trying to get as this directive, right? You shall use this for the express purpose of X, means only for X, right? In contrast, if I'm asking the question where there's a dual purpose and I say, was this done for the express purpose of one of them? The answer's yes. Was it done for the other one? Yes. Was it done for both? Yes. All of those would be satisfied in that context. So two answers to that. I think what you're getting at is perhaps it's not clear a priori what this necessarily means, which means then that we turn to the text and the structure and the purpose of the statute. And so the statute says there's three requirements to be exempt. It has to be procured in the course of buying a loan, buying a car rather, has to be secured by the car and- So do the first one for me and Judge Wilkinson, I apologize. I asked for a little grace. The first one, you're not arguing that the gap coverage wasn't in the course of procuring a car. No. Okay. All right. So it has to be procured in the course of a car and it has to be secured by a car. And if what- Both of those are true. Both of those are true here. But if what we're saying is it just has to have, the loan just has to have as a purpose written down that it's for a car, that whole phrase is superfluous. It does absolutely no work because any loan that's procured in the course of purchasing a car, anytime you go to a dealership and get a car loan, it's going to say it's a car loan. So that whole phrase would do no work if all it means is it has to say it's a car loan. On the other hand, if you give what I think United Auto concedes is an equally well-used definition of express to mean precise and exclusive, if you give express that definition, then all of a sudden that phrase, that whole phrase that Congress put into the statute for some reason has purpose. And the purpose of that phrase is that over and over again in the legislative history of the Military Lending Act, if you look at the text of the Military Lending Act, one of the purposes given for that statute is to prevent what Judge Wilkinson was talking about, which is piling in a bunch of fees and products into a loan that's really for something else. One thing I want to follow up with my friend, Judge Richardson's question, as to the question of whether it's multiple purposes or the question of whether it's a directive or not, I understand your position to be that the words express purpose are pretty much are in itself a directive. It means for one and only one purpose and for no other. And it's a language of exclusion and express purpose is a Congress's, it might have said, you shall, but it did say that with the words of express purpose. And of course, there's another maximum of statutory construction. And that is the exceptions to a statutory purpose and language should be read narrowly. And it wouldn't read things narrowly to say that there's a lot of, that all kinds of bundling can go on. And just because the lender labels it for the purpose, that's artful labeling. We talk about artful pleading, this is art. And, you know, it's just a question of the statute being to protect the servicemen and with disclosures and all the safeguards. If you're ever in a military base and, you know, I've been, I only served in the Army Reserve, but I've been to Fayetteville and Louisville and places, and you go right outside of the base and you go into town, there are so many businesses that want to take advantage of the military and people who are service members. And it's almost like they are just, they just can't wait, whether it's payday or whatever, but they just can't wait to subject members of our armed services to predatory terms. And Congress, with the support of the Department of Defense, wanted to address this very unfortunate development. At least that's what I think is going on. Yes, Your Honor, I agree with all of that. You know, to your point about directives, I do think this is a directive. The Military Lending Act says you shall not take a service member's car as security for a loan unless, among other things, the express purpose of that loan is for financing a car. And I think, you know, Judge Richardson, if they wanted to say something different, it could have said for a car loan or for an express purpose of purchasing a car or involving a car. There are a number of formulations it could have used to signify that it wasn't meaning sold, but it didn't use any of these formulations. It specifically said for the express purpose of purchasing a car. And I see I'm way over time, so... Well, no, that's not on you. Are there any other questions? Judge Richardson, I know you had other questions. You have some more questions. Thank you very much, Judge. I appreciate the time. Sure. Judge Thacker? No, I think she has rebuttal time, though. Okay. Thank you very much. And let's hear from... I think it's... Ms. Mayer, we'd be glad to hear from you. You're representing the court. Anna Moen on behalf of the United States. I want to pick up just quickly on a thread of what Judge Wilkinson was saying earlier. We think the key here in terms of the language of the statute is the focus on the purpose of the financing being the purchase of the car and what we would ordinarily think of as a part of the purchase of a car. There are a couple of different factors that you might think of in trying to figure out whether a loan fits that requirement or not. The first could be whether the product is necessary to obtain or gain possession of the car. This could be something like sales tax. If that's a part of a loan, that's something that the state requires the individual to pay in order to obtain the car, so that would not... It's just the optional stuff that you are... The add-ons and the optional stuff that you're concerned about. Let me ask you one other question, and that is, this statute was passed with the strong support of the Department of Defense, which wanted to look after the interests of servicemen, and these predatory loans were taken a position on this question of bundled loans? Your Honor, in general with bundled loans, yes, the Department of Defense took a position in the 2016 interpretive guidance. The specific question raised there was with respect to personal property and bundled loans that contain cash-out financing, as well as a loan for financing of personal property. But the Department of Defense believes that the logic that underlied that interpretive guidance and that involves the interpretation of that portion of the exemption applies equally here. So when you're talking about a hybrid loan... Do we have an explicit statement from the Department of Defense to that effect? Your Honor, by filing this brief, the Department of Defense strongly concurs with the position that we've taken in this brief and believes that a brief is the definitive position. There's no definitive position before this brief. Your Honor, there was the 2017 interpretive guidance. That guidance was withdrawn out of an abundance of caution. The Department of Defense... And you don't argue that 16 or 17 guidance is entitled to any Chevron-type weight. They're just interpretive rules. We can consider them to the extent they're persuasive or not. That's right, Your Honor. I don't understand anyone to be arguing there's a difference. Do you mind commenting, if you can, on this idea? And I understand you want to focus on the purchase piece, but I think that turns back to the express purpose and whether in a conditional context, whether we're asking if something applies, whether the express purpose can really mean only or sold that we don't think of it that way. I haven't been able to find an example where in a conditional context, it's been referred that way. Do you understand the distinction I'm trying to make? And can you just comment on it from the United States' perspective? I think so, Your Honor. I think I understand the distinction, but to take a step back, I think even if we take the definition of express as specifically intended or something along the lines of what United is suggesting, that still just shows that focus of the purchase is the purchase of the car itself. So I think even under that definition, our reading still stands. And I would also just note that I don't- The focus, so it can be the focus without being the exclusive focus, right? I mean, that's the sort of point of it being a specified instead of sold, is that it can be the focus. I'm not sure why that matters, frankly, but okay, without being the exclusive focus. Your Honor, I think there are a couple of problems with the idea of just the purpose being listed. One, I don't think even United embraces the extreme implications of that position. Later in the brief, they appear to sort of switch to a kind of but-for type test, and I think they don't embrace that idea that simply writing something, stamping something- You can't just say it. So I agree that Judge Wilkinson's hypothetical that they stamp, this is for the purchase of a car, when there's no car involved, right? The fact that you say it's a car loan, if there's no car involved, that doesn't do you any good. Okay, fine, right? It's not just the words. It actually has to have that purpose. So there's got to be money and a car, right? We understand what the basic idea of a purpose is. The question is whether it has to be only that purpose. Your Honor, I think even with the money and the car and the stamp, all of that together, I think you still face the problem that Judge Wilkinson identified, which is that would allow a lender to bundle in cash-out financing and therefore subject the service member to additional interest. That might be a terrible idea. I'm totally with you, right? But I want to sort of bracket just for a minute all the various policy arguments that one can make as to whether this was a good statute or not. When I look at the words of the statute, that's where I'm sort of having trouble, because I can't find an example where anybody uses the express purpose in a conditional statement to mean exclusive, right? The Supreme Court repeatedly uses the term express purpose, and when it uses it, it does not use it in the conditional context to mean the only purpose, right? And so when we look at the words in a conditional statement as opposed to a directive, I don't see it being used to mean what you think it means. Your Honor, I don't think I can sort of more helpfully answer that question, because I'll just say I don't have an example off the top of my head that reflects that, but I think my time has long expired. Well, the word express purpose has a very clear and crystallized meaning in the context of this statute, which the statute was to protect service members from predatory loans. And when you look at the words express purpose, it falls in line. You have a situation where I think text falls in line with purpose in making this the one and only object. It's entirely fair, given what this statute intended to accomplish, and given the very focused, crystallized, it's a laser beam statement about the express purpose. That means car loans. I mean, you can, I point out, you can make these loans for gap coverage or anything else, as long as you make the proper disclosures to members of the military. Just tell them what you're doing. Don't put it, you know, don't hide it under the table or do the things that the Military Lending Act was designed to prohibit. And as I say, what we would be doing is we'd be reading an exemption into the statute. And we're always told that exemptions ought to be very, very narrowly read. And that's what makes me nervous about the appellee's position here, um, is that we're taking the clear purpose of Congress, very strong language, implementing that purpose, and reading an exemption to the very things that the statute aimed to prevent. And that's troublesome. Your Honor, I completely agree with all of that. And I'm well over my time. But I would just conclude by saying that if there's any sort of ambiguity in thinking through the various constructions, that's precisely where the DoD in consultation with financial regulators is empowered to rule make and to fill gaps. But with that said, thank you. All right. Thank you. Is it Ms. Black? I would be happy to hear from you. Thank you. Good morning. My name is Stacey Blank, and I'm here today on behalf of the Appellee United Auto Credit Corporation. The District Court correctly dismissed Mr. Davidson. You might speak in the microphone. It's a little hard on the system to hear if you're not speaking right into it. I know it's hard. Thank you. The District Court correctly dismissed Mr. Davidson's complaint in this case because under the plain language of the statute and the implementing regulation, the extension of credit that United Auto gave to Mr. Davidson was exempt from the MLA. The MLA does not apply, as we've discussed, to a loan procured, one, in the course of purchasing a car, when the loan is offered for the express purpose of financing that purchase, and two, when the credit is secured by the car. The implementing federal regulation likewise excludes from the MLA any credit transaction that is expressly intended to finance the purchase of a motor vehicle when the credit is secured by the vehicle being purchased. Mr. Davidson's allegations in the second amended complaint, along with the retail installment contract that was made in the course of his purchase of a car, it was for the express purpose of financing that purchase and that his credit was secured by the car he purchased. Well, you know, the textual argument that you're making here, it sort of runs a cropper of what the district court said, because in reading the district court's opinion carefully, it uses all sorts of words like related to the purchase of a car or involved with the purpose of the car. And the district court seemed to me by the use of words like related to and intertwined with and involved with wrote a gloss on the statute. And, you know, whether the district court's view is right or whether it's not, to me, it's just a matter of textual interpretation and Congress related to or involved with the purpose of a car or directly related to the purpose to the purchase of a car. And it just seems to me that a gloss was written on this statute. And it makes it even more troubling when it's an exemption to what Congress tried to when I think it's really a classic loophole. All kinds of things might be related to the purchase of a car. And then we get into this never, never land about, well, is this add on directly related to the purchase of a car? Is this add on involved with the purchase of a car? And we get into differences of interpretation between different courts and this and the rest and as to what add ons are involved with and what add ons are directly related to. And it's this kind of fuzzy, fuzzy analysis that I don't see the for me, I make no judgment on the policy arguments. I just think the text is hard to get around. So in fairness to the district court, in this case, the relatedness concept didn't arise in the district court that came from the Department of Defense. That is squarely in the 2016 interpretive rule. And essentially, it was the Department of Defense that said that related charges would be okay and would not run afoul of the exemption. But unrelated charges like cash advances or cash outs would not be appropriate within the scope of the exemption. And so I think what the district court was trying to do is although it had some question about the applicability of the 2016 interpretive rule outside of the context of personal property, but it said even if we apply the 2016 interpretive rule, I think that gap is fine because it is inextricably tied to the purchase of the car. And so the district court really applied the interpretation that the Department of Defense advocated. The Department of Defense was very much behind this and I haven't seen the Department of Defense doing and as Judge Richardson correctly points out, it's persuasive value. We're not into Chevron territory or anything because there's no charge to an administrative tribunal of any of this. To the degree that I'm able to understand what the position of the Department of Defense is, the government represented that it was supportive of the fact that bundle loans were not covered by this. But what we're talking about is directly intertwined and related or involved. So we're going to give rise to all these different tests applied by all these different courts and let neither lenders nor servicemen are going to have any kind of guidance, I guess we'll have to go on top of add-on on top of add-on and maybe we'll have a good couple of good circuit conflicts on add-ons. But the road you're going, Congress could have used the words that you wanted, but they didn't do it. But they didn't use a sole and exclusive either. And that I think is the material point here. Awfully close to it, counsel, when we said express purpose. There have been two district court cases that have considered this, and both of the district courts have rejected the notion that use of the express purpose here meant you were limited to- Can you respond to your colleague's argument that you're reading of express purpose as being sort of specified or identified renders this sort of second piece, that is the loan is offered clause, what I think of as the second element of this conditional exception. It reads it out of the statute. I don't think it does because I can envision a circumstance in which you could have a loan that was made or was procured in connection with the purchase of a car, but was not for the express purpose of financing that car. Maybe it's a title loan, and maybe temporarily they were taken out at the same time, but one was for an entirely different purpose, but you pledged the title over immediately. And so I do think they exist independent of each other. But you not only, counsel, you not only have the words express purpose to deal with, you have the word finance to deal with. And the financing of the car does the gap coverage doesn't need to be part of the financing of a car. In fact, it's most car purchases, it's not. So if I could finish responding, thank you, Judge Richardson, and then I'll come back to Judge Wilkinson's point. I think the second point that I would make about that is that Davidson's argument suffers from the same flaw. When would you ever have a loan made for the express purpose of financing the purchase of a car, but it would not be procured in connection with the purchase of the car. And secured by the car. And secured by the car. So they're reading, you know, negates factor one and possibly factor three. So back to Judge Wilkinson's point. Excuse me, I didn't mean to interrupt. Either you or Judge Richardson, I thought you had completed your answer. No, thank you. You didn't. I'll start first with the notion that a gap waiver, which is what we have in this case, is not insurance. It is a contractual arrangement between the finance company and the borrower, in which the finance company agrees to forgive any indebtedness. So it is not a contract of insurance. Your colleague on the other side said that gap waivers are voided when you take the car abroad. Do you know whether that was true in this gap waiver? I just don't have the contract. I don't know if it was, but I think there are ways around that. That is, you can abate it. You know, you can tell the lender I have to take my car overseas and can I abate it? You can also get a refund. You know, if you decide that it becomes something that is not useful to you anymore, you can terminate. Thanks. It also, because it is a gap waiver, it has to be made under Virginia law, a part of the finance agreement, or it has to be appended to the finance agreement. Judge Wilkinson made a point during my colleague's argument about why can't the lenders just comply with the MLA? What's the big deal? Just make the disclosures. But the critical point is if a service member wants to finance gap or wants to finance an or wants to finance leather seats or new wheels or a prepaid service contract, the MLA prohibits the lender from taking a security interest in the car. So we all know what's going to happen. Those items just simply cannot be financed or the loan can't be made because in most cases, service members only have the car as collateral for the car loan. And so I think it's important to realize that the protection of service members was an overarching purpose of the MLA. But the purpose of the exemption was to make sure that an overly narrow reading of the exemption did not deprive service members of access to needed credit. I mean, the whole purpose of the exemption is a recognition by Congress that service members need the ability to borrow money, to buy cars and to buy personal property. I have a hard time understanding how this impairs a service member's choice because as I understand it, the lender can still offer the gap coverage as long as it complies with the disclosures in the statute. And perhaps the lender is making a loan that's going to be perhaps having the loan outside of the MLA would be, I mean, under the MLA, it might be a lot cheaper. That is not correct, Your Honor. And the reason for that is because the lender cannot take a security interest in the car. No, that is not correct. All that is correct is that the lender cannot bundle the gap coverage or the car wash or whatever with the car loan, but the lender can still offer the gap coverage. It just can't bundle it. It can't because the gap waiver has to be part of the finance agreement because it includes a forgiveness of the debt. And so it is a critical function of the car loan. It's not like an insurance policy. Don't get confused by the difference between an insurance policy. Why is it called insurance? It's not. It's called a gap waiver. This is an agreement between the lender and the borrower that if the car is towed or stolen, the lender forgoes collection of the rest of the loan. And so no insurance company steps in and pays the lender off. Right. It's insuring against loss, which is what insurance policies do. It's insuring against the loss of a car. And that's what insurance policies do. They insure against loss. It is insuring against the risk of loss in the sense that that word insures. Insurance. But it is not a policy of insurance because it has to be included under Virginia law in the financing agreement. And so that prohibits a lender from doing a separate loan. It cannot loan money for the gap waiver and then make a separate loan for the purchase of the car. Or if the service member did that, that would be a terrible idea for them because they want as a feature of the loan, this prospect of forgiveness, and that's reflected right there on the face of the loan. I think it's also interesting to take a careful look at what the Department of Defense has said. It has not frowned on all of bundling. It just draws the line in a different place. Essentially, if you look at the 2017 guidance that was ultimately withdrawn, and withdrawn for the very concern that we've talked about this morning, which is that the inability of service members to finance these, and in some cases, very valuable add-ons, would disadvantage them and discriminate against service members and make it much difficult for them to secure lending. But that argument you made is a policy argument. The question is, if you want to amend the statute, that's a fine argument to make in a legislative hearing. But what we're talking about here is the language of the statute. Well, and the district court adopted the Department of Defense interpretation of the statute. It can be persuasive, and I think the district court found it to be so. And what the Department of Defense did in 2017, it had these questions and answers. What would be permitted under the scope of the exemption and what would not? And I think it's very interesting. In that circumstance, the Department of Defense said extended warranties are okay. You can finance an extended warranty. But conceptually, that is no different even than insurance. It is insurance against the cost of repairs that you have to make. It can be purchased from a third party. It can be purchased later, probably could be purchased for much less cost. Who knows? We don't know that. And it can be added later. So all of the same factors that the Department of Defense contest with respect to gap insurance, likewise exists with respect to an extended warranty, but it said that was fine. Even more problematic, I think, is the Department of Defense's position that the financing of negative equity was acceptable under the exemption. Negative equity is if you owe more money on your trading in car than it is worth, you can finance what you owe on the first car in connection with the second car. It has nothing to do with the second car you're purchasing. It is clearly a credit product. I'm sorry? I'm not sure that your idea of a warranty and gap insurance are one and the same. And you just take what the ordinary consumer does when you go into an automobile dealership. A whole lot of people buy a warranty as part of the car purchase. I think the incidence of people buying gap insurance is much less. But a warranty is pretty much of a standard feature of the purchase of any product. But gap insurance, and I don't buy your argument that it's not insurance. It's insurance. It's classic insurance. But the point is, the warranty and the gap insurance strike me as very different. And not only as a matter of what's insured, but of what the ordinary car purchaser does, which is that they purchase a warranty. But they do not, as a matter of course, purchase gap insurance. They're different. But I don't think there's been any test articulated that turns on the frequency of purchase or how frequently consumers purchase one versus the other. Instead, the test that the Department of Defense articulated is whether or not it was or not. It's just not the language the statute uses related to. It just isn't. So, can I ask the follow-up question to that? Your colleagues seem to suggest that you make two arguments. One, that expressed purpose means identified purpose. And that you have a sort of fallback argument that even if it's required to be related, this is related in some sense of the word. Are you arguing the first one in addition to the second one? Are these alternative arguments? Or are you... I just want to make sure I understand because your colleagues seem to suggest that you are only arguing related. And I interpreted your brief to say, no, expressed purpose means identified purpose. But even if you go down the Department of Defense's related rabbit hole, we would meet that rabbit hole test too. That's exactly right. That's exactly right. And in fact, I think the United States and Mr. Davidson's view diverged. And so, in part, I was trying to respond to both of those. Thank you. Do either of you have any further questions? No. Thank you. We would ask that the court affirm. All right. Thank you very much. We appreciate your argument here. I think you have five minutes of rebuttal time. Yes, Your Honor. I just want to make... I apologize. Go ahead, please. I just want to make three points in response to United Auto's argument. The first is about superfluidity. So what they say is, well, this isn't superfluous because you could get another loan in the course of procuring a car. Maybe you get a vehicle title loan. But that still renders the word express superfluous because that would just mean you could easily have the same result by just saying it has to be for the purpose of purchasing a car. If it's a title loan, or if it's a payday loan, it's not for the purpose of purchasing a car. And so, nevertheless, on their view, the word express is still superfluous. The other thing they say is, well, our reading renders the first phrase superfluous, that it has to be procured in the course of purchasing a car. That's not right either. What that phrase gets at is you are getting a loan from, say, a car dealership. You're going to the dealership, you're in the process of purchasing a car, and you get the loan at the same time. That's what that phrase does. What it does is it excludes from the exemption, the sort of shadow financing that... Wait, what did exclude? I'm sorry. Sure. So if I go to the car dealership... Well, assume I'm a military, all the things. But I go to a car dealership and they say, here's your financing. And I say, I don't like your financing because whatever. I'm going to call Bank of America because I have a relationship with them and I want to get my loan from them instead of from the car dealership. We would still say that's in the course of purchasing a car, right? Because I'm doing it as part of my same course of action. It's not from the car dealership's perspective, it's from mine. It's not limited to if I'm getting it from this dealership, is it? I think that's right. But you can imagine another scenario, which is the kind that I think the relying on a lot of study from the defense department was trying to prevent, which is go to a car dealership, you buy a car or you go to... Because the personal property exemption is the same text. You go to rent a center and you want to buy a couch and there's installment payments and you turn out you can't make the installment payments. So then you go to a payday lender afterwards. It's to finance the purchase, to finance the car, to finance the couch you just bought. It's not in the course of doing so. And so what that phrase gets at is this sort of shadow financing that often was targeting service members, which is a sort of after the fact kind of financing of things like payday loans and more traditional loans that we think of as predatory loans. And so our reading of the middle phrase is the only reading that gives each of these phrases any independent meaning. On our reading, on United Auto's reading, that middle phrase just has no application. The second point I want to make is this question of Virginia law. And I think it's useful to look at exactly what the provision they're citing says. It's on page 21 of United Auto's brief. Now that provision doesn't require anything at all. It's a definitional provision. So it doesn't say if you have gap coverage, it has to be in the loan, or even if the lender wants to issue gap coverage, it has to be in the loan. What it says is if the lender itself is selling the gap coverage, and if it does so as part of a financing agreement or in an addendum, then we're going to call that gap waiver, and then we're going to impose some regulations. In other words, Virginia has come to the same conclusion that Congress came to in enacting the Military Lending Act, which is if you're going to bundle this coverage with a car loan, we're going to regulate it. That's exactly what the Military Lending Act says as well. The danger here that you're pointing to is that you use the word shadow financing and clandestine. But the danger here that the statute tries to clear up is that the service members don't know what they're being hit with. And when all of these different things are bundled, they don't know what the loan is for, and they don't know exactly what add-ons and pay-ons and what interest rate they're being hit with. One of the problems here is that all of these loans, sometimes lenders try to attach exorbitant rates of interest on these loans. And the dealings with the car purchase are sometimes complicated and involve different items and the rest. But the bottom line is these service members a lot of times do not know what they're being hit with. Yes, Your Honor, I think that's right. And I think that's why the Navy has said in testimony to Congress before the most recent Defense Department regulations that automobile dealerships acting as loan brokers can do far more damage than even payday lenders. And then we're getting at exactly this point. If you can pack anything you want, fees, ancillary products into a loan, it's very difficult for a service member to know what's there. And then the service members risking their car, not for the car loan, which you have to put your car up as security to get, but for all of these ancillary products. And we know that Congress didn't intend for that to happen, because if these ancillary products are sold separately, we know United Auto doesn't dispute that the Military Lending Act regulates them. So we know that Congress did not think that service members should be able or that lenders should be able to take service members' cars as collateral for things like gap coverage or insurance, things like that, because that's prohibited under the Military Lending Act. The only question here is, can you get around that by bundling things together? I think the very specific language that Congress used demonstrates that you cannot. If there are no further questions, we ask that this court reverse. All right. I certainly do thank you. And we thank all of you and appreciate very much your arguments. We will ask the Courtroom Deputy to adjourn court.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Julius N. Richardson